UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSE A. MARINI, JR.,

                Plaintiff,

      v.                                    Case No. 13-10067
                                            Honorable Julian Abele Cook, Jr.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.


ORDER

       The Plaintiff, Jose A. Marini, Jr., filed a complaint under 42 U.S.C. § 405(g), seeking to

obtain a review of an adverse final decision by the Defendant, Commissioner of Social Security

("Commissioner) who had concluded that he was not disabled under the Social Security Act.

Thereafter, the Commissioner filed a motion for summary judgment with the Court, contending that

there are no genuine issues of a material fact to be resolved in this action (ECF. No. 13). Marini, in

expressing his belief that his application for relief does have merit, has a filed a motion, seeking a

remand of this action to an administrative law judge for further proceedings.

       Both of these motions were referred to Magistrate Judge David R. Grand for his evaluation.

On November 7, 2013, he filed a report, recommending that the Court (1) grant the Commissioner's

motion for a summary judgment, and (2) deny Marini's request for a remand. A timely objection by

Marini followed.

I.

       In April of 2011, Marini filed applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"), claiming to have sustained an injury that rendered him unable to work as of September 6, 2008.  Although these applications for DIB and SSI were rejected, Marini sought and ultimately obtained a *de novo* hearing before an administrative law judge who, in a decision rendered on September 13, 2012, determined that the applicant was not a disabled person within the meaning of the Social Security Act.

In his initial request for benefits, Marini contended that his impairment was caused by back pain and depression stemming from a work-related slip and fall accident. An examination of Marini's spine that was undertaken shortly thereafter revealed degenerative changes with a diffusely bulging disc at the L5-S1 level and a left-sided herniated disc. In May of 2009, Marini underwent a lumbar decompressive laminectory and posterolateral fusion procedure. Following his surgery, Marini continued to report pain during his follow-up appointments with a nurse, Helen DeCorte, who ultimately diagnosed him with having a chronic lower back pain that was secondary to failed back surgery syndrome. However, DeCorte and Marini's treating neurosurgeon, Dr. Mark Adams, jointly believed that their patient had achieved "maximal medical improvement from his back standpoint." (Tr. 418).

In July of 2011, Marini underwent a consultative psychological examination with George Pestrue, Ph.D. who (1) opined that Marini had experienced major bouts of depression, along with posttraumatic stress disorder, and (2) assigned him a Global Assessment of Functioning ("GAF") score of 48.[1] (Tr. 449). Dr. Pestrue specifically observed that, although Marini's medical problems appeared to be his primary disability, his social anxieties made it difficult for him to work in social

---

[1] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100. Lower scores suggest the existence of more severe mental limitations. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 276 (6th Cir. 2009).

situations. *Id.*

At the conclusion of the administrative hearing, the administrative law judge determined that, although Marini suffered from several severe emotional impairments (to wit: degenerative disc disease, sleep apnea, obesity, affective disorder, and anxiety disorder) (Tr. 14-15), he did not have an impairment or a combination of impairments that met or equaled the "Listing of Impairments." It was also the conclusion of the administrative law judge that Marini did possess the residual functional capacity to perform sedentary work subject to a series of identifiable prohibitions; namely, (1) frequent reaching in front with his left upper extremity; (2) occasional overhead lifting with his left upper extremity; (3) occasional balance, stooping, crouching, kneeling, crawling, and climbing ramps and stairs; (4) no climbing ladders, ropes, or scaffolds; and (5) no concentrated exposure to vibration and workplace hazards. (Tr. 22). The administrative law judge also placed a limitation upon Marini which restricted him from performing job assignments other than those which required simple, routine, and repetitive tasks. *Id.*

After taking Marini's limitations into consideration, the administrative law judge found that this applicant was effectively precluded from performing any of his past relevant work assignments. (Tr. 22). However, based upon the testimony of a vocational expert, the administrative law judge also determined that, notwithstanding his limitations, Marini was capable of performing a significant number of jobs that currently exist in the national economy. (Tr. 23-24). As a result, the administrative law judge concluded that Marini was not suffering from a disability which is compensable under the Social Security Act. This declaration became the final decision of the Defendant on December 10, 2012 when the Appeals Council denied Marini's request for a review. This lawsuit followed.

II

The Court has the authority to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence, and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if such evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. It is important to note that the reviewing court must not "review the evidence *de novo*, make credibility determinations [or] weigh the evidence." *Brainard*, 889 F.2d at 681.

III.

In his appeal to this Court, Marini has identified the following claimed errors within the magistrate judge's report; namely, the finding that the administrative law judge's (1) physical residual functional capacity assessment was supported by substantial evidence; (2) credibility determinations were supported by substantial evidence, and (3) mental residual functional capacity assessment was supported by substantial evidence. These objections will be addressed seriatim.

Marini initially argues that the magistrate judge ignored substantial evidence in the record which refutes the administrate law judge's residual functional capacity assessments. As noted in the report, the administrative law judge considered a variety of sources with which to support her

determination that Marini possessed the residual functional capacity to perform a reduced range of sedentary work, to wit: objective medical tests, examination records, the state agency's physician's conclusions, and statements from Marini and his wife. (Report and Recommendation at 14).  The record is clear that the administrative law judge reflected upon the multiple diagnostic images of Marini's back and neck in great detail, noting that all of these diagnostic images had failed to objectively substantiate his allegations of disabling pain. In fact, both the administrative law judge and the magistrate judge placed great stock in the opinions of Marini's treating physician. In virtually all of Marini's post-surgical consultations, the feedback from Dr. Adams was the same.

Indeed, consider, for example, a sample of Dr. Adams commentary: August 9, 2010, " . . . frankly I had hoped to find something wrong with it that I could [attribute to Marini's] ongoing complaints to, but unfortunately it looked really good." (Tr. 340). January 24, 2011: "Unfortunately, [the myelogram] really does not show significant compression to the point where I would recommend any further surgery." (Tr. 337). May 16, 2011: "I really do not see any instability or changes that would warrant any further surgery unfortunately so I think [Marini] has reached his maximal medical improvement from his back standpoint." (Tr. 418).  As the regulations make clear, a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . . " 20 C.F.R. § 404.1527(c)(2).

Dr. Adams' opinions with regard to Marini's physical prognosis are shared by at least three other medical professionals. For example, Dr. Scott Lazzara notes that Marini did "not appear to require further surgical intervention but he may benefit from injection treatments and physical

therapy. The patient's degree to impairment appears mild to moderate."[2] (Tr. 443).  Marini's treating

nurse, Helen DeCorte, indicated that she did "not really see anything on his MRI that would make

[her] think that there [was] any issue." (Tr. 346).  Finally, Dr. Daniel Dolanski, a state agency

medical consultant, concluded that, "the medical findings show that [Marini] can move about and

there is no muscle weakness or nerve damage to prevent [him] from working." (Tr. 78). In summary,

there appears to be substantial evidence to support the opinion of Marini's treating physician.

Although Marini takes the position that the "[report and recommendation] is flawed and

ignores substantial evidence in the record . . . ." the sole basis for this argument is premised upon

the assertion that "Dr. DiBella diagnosed [him] . . . with an antalgic gait, spinous process tenderness,

and mild paraspinal muscle spasm." (Plf's Obj. to R&R at 2-3).  The entirety of Marini's analysis

is limited to this conclusory statement. Even assuming, *arguendo,* that Marini has accurately

captured the medical views of Dr. DiBella, he has failed to articulate how–if at all–this impacts the

administrative law judge's determination that he is not disabled under the Social Security Act.

Moreover, he offers nothing to suggest why the Court should disregard the overwhelming evidence -

much of which comes from his own treating physician. In summary, Marini has failed to persuade

the Court that the administrative law judge's physical residual functional capacity assessment is not

supported by substantial evidence.

Marini next complains that the magistrate judge erred by concluding that the administrative

law judge's credibility determinations were supported by substantial evidence. The crux of his

argument is that (1) there is ample evidence in the record to support his contention that he

---

[2] In fact, Marini reported a 45% improvement in his symptoms after just four months of physical therapy. (Tr. 486).

experienced the level of pain described by him, and (2) the magistrate judge inappropriately relied

upon evidence which indicated that he is able to do simple tasks around that house to suggest that

he is capable of working.

A finding on credibility must be (1) based upon the entire case record, and (2) "sufficiently

specific to make clear to the individual and any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see also* 20 C.F.R.

§ 404.1529(c)(3) (listing factors to be considered in making credibility determination); *Id.* §

416.929(c)(3) (same). Moreover "[s]ince the [administrative law judge] had the opportunity to

observe the demeanor of [the] witness, his conclusions with respect to credibility should not be

discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.,* 987

F.2d 1230, 1234 (6th Cir. 1993) (citation and internal quotations omitted). Accordingly, the Court

is "limited to evaluating whether or not the [administrative law judge's] explanations for partially

discrediting [Marini's alleged symptoms] are reasonable and supported by substantial evidence in

the record." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003).

In assessing the credibility of Marini's testimony, the administrative law judge determined

that his "medically determinable impairments could reasonably be expected to produce the alleged

symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of

these symptoms are not credible to the extent they are inconsistent with the [] residual functional

capacity assessment." (Tr. 20).  As required by SSR 96-7p, she provided several specific reasons

for discounting Marini's testimony, to wit: (1) the medical evidence in the record failed to

corroborate his claims of total disability; (2) his reported activities of daily living were inconsistent

with his allegations of disabling symptoms; and (3) a third-party function report submitted by his

wife which supported his ability to engage in a wide variety activities including, *inter alia*, taking care of his children, visiting with friends, using a computer, and playing video games. (Tr. 21-22).

The Court finds that Marini's objection to the magistrate judge's adoption of the administrative law judge's credibility determination is not persuasive for several reasons. First, beyond providing a dense recitation of the diagnoses of Drs. DiBella and Lazzara, Marini has failed to articulate how the issues that were identified by them correlate with the pain he alleges to be experiencing. By way of example, Marini states that "[e]ven the [administrative law judge] acknowledged that based upon Dr. DiBella's diagnosis, [Marini] was presenting with ongoing radiculopathy at L5-S1 associated with neuroformainal narrowing." (Plf's Obj. to R&R at 4). This assertion, without more, means very little with respect to the severity of pain actually felt by Marini. In fact, Dr. Lazzara described Marini's condition as presenting only "mild difficulty." (Tr. 443).

Finally, the magistrate judge's reliance on Marini's ability to care for his children and doing light work around the house was not the only evidence considered in support of the administrative law judge's credibility determination. Furthermore, the fact that Marini engaged in some daily activities, while not dispositive of his ability to work, may be considered along with other medical evidence. *See* 20 C.F.R. § 404.1529(c)(3)(I); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An [administrative law judge] may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). As such, in light of the great weight and deference that the Court must give the administrative law judge's credibility determination on review, the Court finds that Marini has failed to articulate a basis for overturning this finding.

In his final objection, Marini contends that the residual functional capacity and the

8

hypothetical question posed to the vocational expert did not account for the administrative law judge's finding that he had moderate difficulties in concentration, persistence, and/or pace ("CPP"). (Plf's Obj. to R&R at 5). Concentration, persistence, and pace, refer to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3). Citing to *Edwards v. Barnhart,* 383 F. Supp. 2d 920 (E.D. Mich. 2005) (report and recommendation adopted), Marini argues that the administrative law judge's mental residual function capacity finding–which limited him to simple, routine, and repetitive tasks–was insufficient to adequately address his noted CPP deficiencies.

In *Edwards,* the magistrate judge held that, in light of the administrative law judge's finding that the plaintiff had moderate limitations in CPP, the "reference merely to 'unskilled sedentary work' in [the] hypothetical question [to the vocational expert] [was] insufficient to describe and accommodate concentration deficiencies.'" *Id.* at 930. Indeed, the "Plaintiff may [have been] unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* According to the court, while the administrative law judge's conclusion that the plaintiff was not disabled due to her mental limitations was supported by substantial evidence, the failure to include this information in the hypothetical to the vocational expert precluded the court from being able to determine the number of jobs that the plaintiff was actually capable of performing.

Several courts in this district have disagreed with the reasoning in *Edwards*; namely, the notion that an administrative law judge is required to explicitly reference any level of deficiency in the plaintiff's CPP to the vocational expert. In *Lewicki v. Comm'r of Soc. Sec*., 09-11844-BC, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010), for example, the court held that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace

9

does not necessarily preclude simple, routine, unskilled work." (citations omitted); *see also Bohn-Morton v. Comm'r of Soc. Sec.,* 389 F.Supp.2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work limitation in residual function capacity was sufficient to account for administrative law judge's finding that the claimant "often" experienced issues with CPP); *Edmunds v. Comm'r of Soc. Sec.,* No. 09–CV–13076, 2010 WL 3633768, at \*8 (E.D. Mich. Aug. 17, 2010 ) (substantial evidence supported administrative law judge's finding that claimant with moderate CPP could perform "simple, routine, repetitive" work).

The Court agrees with the latter cases as well as the Defendant's argument that "Plaintiff's concentration, persistence or pace was not significantly impaired and did not need to be included in her hypothetical to the vocational expert." (Def's Mot. for Sum. J. at 20). Thus, "a hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir.2008) (quoting *Webb v. Comm'r of Social Sec.*, 368 F.3d 629, 632–33 (6th Cir.2004)). The ultimate question, therefore, is whether the administrative law judge's decision was supported by substantial evidence. *See Schalk v. Comm'r of Soc. Sec.*, 10-CV-13894, 2011 WL 4406824, \*11 (E.D. Mich. Aug. 30, 2011) (report and recommendation adopted) (discussing how "there is no bright-line rule requiring remand whenever an [administrative law judge's] hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the [administrate law judge's] Residual function capacity.'").

Here, Magistrate Judge Grand correctly concluded that the administrative law judge's mental

10

residual function capacity assessment was supported by substantial evidence, and, as such, Marini's "moderate limitations" in CPP did not need to be expressly included in the hypothetical to the vocational expert. Indeed, the administrative law judge specifically noted that Marini engaged in activities "that require a fair degree of concentration, persistence, and pace," including, using a computer, managing his own money, socializing online, playing video games, and caring for his young children. (Tr. 22). Furthermore, the state-appointed psychologist opined that Marini did not have "sustained concentration and persistence limitations" and was capable of performing "one and two step tasks on a sustained basis." (Tr. 90-91).   Regardless, the administrate law judge's hypothetical to the vocational expert implicitly recognized Marini's mental impairments by limiting his residual function capacity to "simple, routine, repetitive tasks" and "only occasional inter[action] with supervisors and coworkers . . . ." and never with the general public. (Tr. 22).

Certainly, the evidence with respect to Marini's mental impairment is a far cry from the circumstances in *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010)–relied upon by Marini–where the state-appointed  psychologist "specifically limited Ealy's ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.* at 516. Finally, as a practical matter–and consistent with Marini's approach thus far–he has failed to explain why the facts of his particular case require a more detailed hypothetical to adequately account for his moderate limitations in CPP. Moreover, he has not offered any suggestion with respect to what those additional limitations should be. As a result, the Court finds that the administrative law judge's hypothetical to the vocational expert adequately accounted for Marini's limitations in concentration, persistence, or pace.

11

IV.

For the reasons that have been outlined above, the Court will adopt the report of the magistrate judge in its entirety.  In so doing, the Court will (1) grant the Commissioner's motion for summary judgment (ECF No. 13), (2) deny Marini's motion for remand (ECF No. 11) and (3) affirm the decision of the Commissioner.  This Order closes the case in its entirety.

IT IS SO ORDERED.


Date: March 25, 2014                                    s/Julian Abele Cook, Jr.
                                                        JULIAN ABELE COOK, JR.
                                                        U.S. District Judge



CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 25, 2014..


                                                        s/ Kay Doaks
                                                        Case Manager